

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 20, 1951

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1243

Re: Legality of paying for clas-
sified advertising from any
appropriation other than that
specific appropriation to the
State Board of Control for

Dear Sir:

"advertising State's business."

Your request for an opinion reads as follows:

"In the departmental appropriation bill under
which we are now operating is found the following
appropriation for maintenance and miscellaneous
operating expense for the State Board of Control:

" 'Bonds for employees, fuel, water, lights,
furniture, fixtures, office equipment, photostat sup-
plies, printing and binding, paper and office supplies,
support and maintenance of public buildings and
grounds, including extra help and supplies, testing
of materials, duplicating machine supplies, equip-
ment, telephone, telegraph, postage, stationery, books,
advertising State's business, express and drayage,
travel expenses, typewriter parts and supplies, auto-
motive equipment, elevator maintenance, salaries,
air conditioning maintenance, uniforms, photograph-
ic equipment, receptionist supplies and equipment,
flags, contingencies, and maintenance of State Ceme-
tery.'

"There have been presented to me accounts for
advertising State's business drawn against appropria-
tions other than the one quoted above. For a specific
example, see photostatic copy of the attached claim.

The appropriations do not specifically provide for
the advertising of State's business.

"Provisions for the Board of Control to do
such advertising may be found in R.C.S., Articles
610, 634, 643, 650, 666, and others as amended.

"QUESTION: Would the passing of accounts
incurred to comply with above quoted statutory
provisions against appropriations which do not con-
tain a specific appropriation for advertising State's
business be in violation of general rider 15-b of the
departmental appropriation bill which provides in
part as follows:

" 'The appropriations herein provided are to
be construed as the maximum sums to be appro-
priated to and for the several purposes named here-
in, and the amounts are intended to cover, and shall
cover the entire cost of the respective items and the
same shall not be supplemented from any other
sources.'"

Article 666b, V.C.S., reads, in part, as follows:

"Section 1. Hereafter all departments and agen-
cies of the State Government, when rental space is
needed for carrying on the essential functions of such
agencies or departments of the State Government, shall
submit to the State Board of Control a request there-
for, giving the type, kind, and size of building needed,
together with any other necessary description, and
stating the purpose for which it will be used and the
need therefor.

"Sec. 2. The State Board of Control, upon re-
ceipt of such request, and if the money has been made
available to pay the rental thereon, and if, in the dis-
cretion of the Board such space is needed, shall forth-
with advertise in a newspaper, which has been regu-
larly published and circulated in the city, or town,
where such rental space is sought, for bids on such
rental space, for the uses indicated and for a period
of not to exceed two years. After such bids have been

received by the State Board of Control at its principal office in Austin, Texas, and publicly opened, the award for such rental contract will be made to the lowest and best bidder, and upon such other terms as may be agreed upon. The terms of the contract, together with the notice of the award of the State Board of Control will be submitted to the Attorney General of Texas, who will cause to be prepared and executed in accordance with the terms of the agreement, such contract in quadruplicate; one of which will be kept by each party thereto, one by the State Board of Control, and one by the Attorney General of Texas. The parties to such contract will be the department or agency of the government using the space as lessee and the party renting the space as lessor."

The foregoing Article makes no provision for the payment of advertising for bids on rental space. It requires the agency desiring the rental space to submit to the State Board of Control a request to obtain such space for it. If the Board, in the exercise of its discretion, finds such space is needed by the agency, it then becomes its duty to advertise for bids in a newspaper which has been regularly published and circulated in the city or town where such rental space is sought, unless the request comes within one of the exceptions contained in Section 4 of Article 666b.

The appropriations for the support and maintenance of the executive and administrative departments and agencies of the State for the current biennium are contained in the Departmental Appropriation Bill. (H.B. 322, Acts 51st Leg., R.S. 1949, ch. 615, pp. 1208 et seq.) The appropriations to the State Board of Control are found at pages 1232 through 1236. Item 78 of these appropriations, which has been quoted in your request, is for printing, contingencies, "advertising State's business," and other purposes.

The photostatic copy of the claim attached to your letter, as an example of such claims presented to you by other agencies having appropriations in House Bill 322, is for advertising in a newspaper for bids on rental space, under the provisions of Article 666b, for the Texas Liquor Control Board. The claim was approved by that Board for payment out of Item

50 of its current appropriation for printing, contingent expenses, and other purposes. Neither "advertising State's business" nor cost of advertising for rental space is specifically mentioned in Item 50.

We have also examined the appropriations made to each of the other departments, boards, commissions, and other State agencies named in House Bill 322, and in all other Departmental Appropriations Bills passed since 1941, which have had an appropriation for the payment of rental space and have not found in any of them either a specific appropriation for "advertising State's business" or for the payment of the cost of advertising for bids on rental space. It appears that Item 78 of the Appropriations to the State Board of Control is the only existing specific appropriation for "advertising State's business."

Since Article 666b does not specifically provide for the payment of advertising for bids on rental space by the Board of Control or by the department or agency for which such space is sought, and no specific appropriation having been made to any such agency for the payment of such advertising, it becomes necessary for us to determine whether the Legislature intended for the cost of advertising for bids on rental space to be paid by the Board out of its appropriation for "advertising State's business" contained in Item 78 of its current appropriations.

We have examined the appropriations made to the State Board of Control in each of the respective departmental appropriations bills, including the one for the biennium ending August 31, 1921, which became available to the Board January 1, 1920, and the appropriations for the biennium beginning September 1, 1951, and have found in each of them a specific appropriation for "advertising State's business," except in the appropriations for the biennium ending August 31, 1921. However, the Legislature included therein an appropriation of $30,000 for the period beginning January 1, 1920, and ending August 31, 1920, and a like amount for the fiscal year ending August 31, 1921, to be expended by the Board for such purposes as it "may find necessary to effectuate the purposes" of the Act creating the Board. One of the undoubted purposes for which these appropriations were made was to pay the cost of advertising in newspapers for bids on contracts for supplies.

Consequently, the State Board of Control has been from the time of its creation, January 1, 1920, continuously charged with the duty of advertising for bids on contracts for such supplies as it was required to purchase for the use of the State, its departments and institutions, except such supplies as it was authorized to purchase without the necessity of first advertising for bids thereon, and has had at all times an appropriation for "advertising State's business" which clearly includes the payment of advertising for bids on contracts for such supplies.

Therefore, in view of the foregoing, we have concluded that it was the intent and purpose of the Legislature that the expenses incurred for advertising for bids on rental space sought by an agency of the State under the provisions of Article 666b, V.C.S., would be paid out of the appropriations to the State Board of Control for "advertising State's business," for such advertising undoubtedly comes within the meaning of that term as used in Item 78 of the Board's appropriations for the current biennium. If such had not been the legislative intent of the Forty-eighth Legislature which passed the Act from which this Article was codified, and all other Legislatures, including the Fifty-second, which have convened since 1943, they undoubtedly would have made other specific provision for the payment of such advertising.

You are therefore advised that the only available appropriation for the payment of advertising in newspapers for bids on rental space required by Article 666b, V.C.S., is contained in Item 78 of the appropriations to the State Board of Control for the current biennium. The payment inquired about cannot be made from other funds.

## SUMMARY

The appropriation for "advertising State's business" contained in Item 78 of the appropriations to the State Board of Control for the current

biennium is now the only available appropria-
tion for the payment of advertising for bids on
rental space required by Article 666b, V.C.S.,
H.B. 322, Acts 51st Leg., R.S. 1949, ch. 615,
p. 1235.

APPROVED:

C. K. Richards
Trial & Appellate Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

BWB:wb:mf

Yours very truly,

PRICE DANIEL
Attorney General

By
    Bruce W. Bryant
        Assistant